**Edwin T. WYMAN, Plaintiff,**

v.

**Robert C. WATSON, Commissioner of Patents, Defendant.**

**Civ. A. No. 1506–57.**

United States District Court
District of Columbia.
March 17, 1959.

Miles D. Pillars, and Jesse C. Bowyer, Washington, D. C., for plaintiff.

David Kreider, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is an action against the Commissioner of Patents under 35 U.S.C. § 145, to procure an adjudication that the plaintiff is entitled to a patent on an invention embodied in Application Serial Number 141,503, filed on January 31, 1950.

The plaintiff's alleged invention relates to tire valves used in tubeless motor vehicle tires. The Commissioner of Patents allowed certain claims and disallowed others. One of the disallowed claims is involved in this suit.

Prior to the time when tubeless tires came into vogue, and when the tires customarily used were provided with an innertube, a valve was needed as a means of pumping air into the tube and connecting the innertube with the rim on which the tire was mounted. The typical valve used for that purpose consisted of a metallic threaded core, and was provided with washers and a nut. In order to insert the valve into the innertube and the rim, the various parts of the valve had to be unscrewed and separated. One of the parts was then inserted into the rim and innertube, and the remaining parts put back in place; and the valve was screwed into position by means of a nut. Valves of this type are popularly known and referred to in the testimony in this case as a "clamp-in" valve.

Subsequently, another type of valve was devised for use with innertubes. It in effect made the valve a part of the structure of the innertube, by means of a vulcanizing process.

When tubeless tires began to appear on the market in 1947, the valves that were first used were of the "clamp-in" variety, which has been briefly described above. They did not differ too much from valves of the "clamp-in" type that had been previously used on innertubes. The "clamp-in" valve has a number of disadvantages. It consists of several parts and is, therefore, more costly to manufacture. It takes time to insert it into the rim, because it first has to be unscrewed, then one of the parts inserted in the rim, and the other parts then screwed back onto the remaining part.

The plaintiff endeavored to solve this problem by developing a valve which was a single, unitary structure, and thereby avoided the disadvantages that have just been mentioned. It consisted of a single piece covered by a hard rubber sheathing. The middle of the sheathing constituted an abutment. At one end of the sheathing, there was a rubber flange which had a radius that was somewhat longer than the radius of the abutment. Between the two, there was a groove. The valve was mounted by inserting it into the opening of the rim and snapping it into position, since the groove between the two rubber protuberances made it possible for the valve to be held in place tightly. This valve takes the place of the prior valve which consisted of several parts, and which had to be unscrewed first, then inserted into the rim, and then fastened into position by screwing a nut tightly. This constitutes the advance that the plaintiff has made in the art.

In the specifications forming a part of his application, he summarizes his invention as follows:

"My valve omits the threaded valve stem, the packing and tightening nut, commonly used on conventional valves with which I have been familiar. My valve thus costs less to manufacture and to apply to the wheel rim.

"Briefly, my invention comprises a tubular valve stem having a cen-

tral longitudinal air passage therethrough, and a standard check valve is carried in the central air passage.

"A covering of flexible rubber is molded to the valve stem which at the bottom may enlarge to a flat, circular base. Abutment means is then provided for a snap-in fitting or retention of the valve in position on the wheel rim."

This type of valve has been called throughout the testimony a "snap-in" valve.

The claim involved in this action is Claim II, and reads as follows:

"A valve structure insertable through an aperture provided in the side wall of a wheel rim for use in inflating a tubeless tire mounted thereon, comprising a tubular valve stem having a central air passage therethrough and a check valve therein, a rubber covering on said valve stem having a flanged base, annular abutment means disposed in spaced relation to said flanged base, and an ankle portion formed in said rubber covering between said flanged based and said annular abutment means and adapted to fit into said wheel rim aperture, said flanged base and annular abutment means adapted to engage opposite sides of the wheel rim tightly when said ankle portion is fitted into said aperture to form an airtight connection with said rim."

There is no doubt that the plaintiff had an ingenious idea and that he has made a contribution to the industry. The question is whether the contribution rises to the dignity of an invention; that is, whether it is the product of the inventive faculty or of the mechanical skill of a person ordinarily skilled in the art.

The plaintiff has been allowed claims covering one particular species or variety of the "snap-in" valve. What he seeks here is a broad and generic claim covering "snap-in" valves of various kinds, irrespective of their variations. If al-

lowed, it would practically grant to the plaintiff a seventeen-year monopoly on various types of tire valves of the "snap-in" construction that are now in general use and would put the entire industry under tribute to him so far as these valves are concerned for many years to come. Naturally, there should be no hesitancy in granting him the monopoly even if this result would come about, if the plaintiff actually made such a broad and far-reaching invention as he claims he did. On the other hand, careful scrutiny is indispensable to make certain that the public would not be paying for something that does not constitute as broad and basic an invention as the plaintiff contends.

The patent to Eberhard, Number 2,-049,252, issued on July 28, 1936, relates to valves used in innertubes. It discloses a valve that constitutes a single, unitary structure, containing a flexible rubber stem similar to that shown in the plaintiff's application. To be sure, Eberhard's invention contemplates its use for innertubes and not for tubeless tires. The Board of Appeals of the Patent Office held, however, that it did not constitute invention to adapt the Eberhard structure for use on tubeless tires, making the necessary alterations for that purpose. It was the view of the Board of Appeals that this step would be the product of mechanical skill. The Court perceives no reason for differing with this conclusion. Moreover, even if the Court were to reach an independent conclusion without regard to the decision of the Board of Appeals, the Court would arrive at the same result.

The Examiner of the Patent Office used a somewhat different and more remote approach to the same conclusion. He cited a patent to Herzegh, Number 2,587,470, issued on February 26, 1952, which disclosed the use of the old-fashioned valve of the "clamp-in" variety for tubeless tires. The Examiner was of the opinion that there was no invention in molding a rubber covering with a groove around the metallic valve assembly in view of Eberhard's teaching.

While this ruling was likewise affirmed by the Board of Appeals, the latter used the ground heretofore discussed as the principal basis for holding that the claim involved in this suit was properly disallowed.

The Court is unable to discern any reason for disagreeing with either of the two reasons for disallowing the claim. Accordingly, the Court will render judgment in favor of the defendant, dismissing the complaint on the merits.

Counsel will submit proposed findings of fact and conclusions of law and the judgment.